350 So.2d 433 (1977)
Sheila O. JOHNSON
v.
George Eugene BRYANT et al.
SC 2421.
Supreme Court of Alabama.
September 30, 1977.
*434 Thomas B. Norton, Jr., Bay Minette, for appellant.
John Earle Chason and Allan R. Chason, Bay Minette, for appellees.
MADDOX, Justice.
The trial court permanently enjoined the defendant from building a boathouse and extension of her existing pier on the ground that the proposed construction would create a nuisance and a prospective breach of a restrictive covenant.
The parties are owners of adjacent lots in Terry Cove Subdivision, a beachfront residential subdivision in Baldwin County. Defendant, Sheila Johnson, owns lot 17; plaintiffs, Earl Joyner and George Bryant, own lots 16 and 18 respectively. Prior to the present controversy, the defendant maintained a "T" shaped pier, which extended approximately 64 feet from the shoreline. Four "tieoff" pilings ran parallel to and about 43 feet from the end of her existing pier. Several of the other plaintiffs also maintained piers. Plaintiff Bryant's pier extended about 72 feet from the shoreline.
The water in Terry Cove is generally shallow. A channel about 20 feet deep and between 100 and 125 feet wide, was dredged some 70 to 75 feet from the shoreline to accommodate boats. The channel generally meanders parallel to the existing shoreline.
The event which led to the instant suit occurred when defendant Johnson got a permit from the Army Corps of Engineers to construct a covered boathouse and extension to her existing pier. The proposed boathouse was to be built on the eastern end of the pier along with a ten foot extension so as to accommodate a bathroom facility adjacent to the boathouse. There is some evidence that county health authorities and the Alabama Water Improvement Commission required adequate sanitation facilities to be placed on the site.
Plaintiffs adduced much evidence to support their complaint that the proposed construction would create a nuisance. One factor relied on by the plaintiffs was that the structure would extend some 34 to 43 feet into the navigable channel, thus making navigation and recreational activities more difficult. Plaintiffs further showed that the size of the boat owned by the defendanta 47-foot houseboatand the boats of numerous friends who were frequently docked at the defendant's pier in similarly large craft, increased the danger. They also introduced evidence to show that the presence of the large craft created a sanitation risk, and they claimed that sewage would be deposited by the craft at the docks.
Plaintiffs also introduced evidence to show a breach of the restrictive covenant created by the predecessor in title to each of the lots in question. That covenant, in pertinent part, stated:
"[N]othing but a single private dwelling or residence of not less than 900 sq. ft. living area designed for occupancy of families shall be erected on any lot in these units of said subdivision. . . ."
No residence had been built on the defendant's lot and the plaintiffs allege that the boathouse would serve only as a residence for the defendant. Plaintiffs claimed that the defendant would sleep upon her boat for four or five days at a time.
Lastly, the plaintiffs claimed the defendant was using her pier for a commercial venture. In support of this contention, the plaintiffs' witnesses testified that as many as 10 to 15 cars would be parked at the defendant's lot on occasions. Also, the plaintiffs showed that the defendant's boat was licensed to carry commercial passengers, that several of the boats which visited the defendant's dock were commercial fishing vessels, and that the defendant's husband was a commercial fisherman.
*435 The defendant rebutted the plaintiffs' contentions, primarily relying on the fact that the Corps of Engineers had approved the proposed construction. The defendant also stated that a septic tank had been completed and that the four pilings extending some 43 feet from the end of her dock had been there since 1974. Defendant admitted that on occasion numerous friends had visited the lot, but the defendant stated that no commercial passenger had ever boarded from her pier and that she has never taken any commercial passengers on her boat.

I
The first issue presented is whether the proposed construction of the boathouse would constitute a nuisance.
Title 7, § 1081, Code of Alabama, 1940 (Recomp.1958), defines a nuisance as:
"[A]nything that worketh hurt, inconvenience, or damage to another, and the fact that the act done may otherwise be harmful does not keep it from being a nuisance. The inconvenience complained of must not be fanciful, or such as would affect only one of a fastidious taste, but it should be such as would affect an ordinary reasonable man."
Title 7, § 1083, Code, states:
"Where the consequences of a nuisance about to be erected or commenced will be irreparable in damages, and such consequences are not merely possible, but to a reasonable degree certain, a court of equity may interfere to arrest a nuisance before it is completed."
While the finding of the trial judge that a nuisance existed and that the proposed structure was a prospective breach of the restrictive covenant carries great weight [Owens v. Owens, 281 Ala. 239, 201 So.2d 396 (1967)], we are of the opinion, after reviewing the evidence, that the trial judge erroneously enjoined the construction of the proposed boathouse and pier.
It is undisputed that the defendant had a permit from the Army Corps of Engineers "to construct a 4 × 10' addition to eastern end of an existing permitted (SAMOP-S-75-235VL) pier and construct one (1) covered boathouse 20' wide × 53' long × 25' high above mean low water adjacent and parallel to existing pier for houseboat mooring. Place one (1) additional piling 10"-12" diameter in line with existing piling. Also install two (2) 10"-12" piling 20 feet landward of the east end of existing pier on 10 foot centers to be used to support a 10' wide × 20' long × 8' high shed constructed two feet above existing pier elevation to accommodate sanitary restroom facilities adjoining boathouse. All sanitary facilities will be constructed in accordance with current regulations provided by the Baldwin County and/or Alabama State Board of Health in Terry Cove off Perdido Bay at Baldwin County, Alabama." The special conditions of the permit were:
"a. Any vessel mooring to the permitted facility must meet all U. S. Coast Guard Marine Sanitation Regulations.
"b. If any discharge of treated domestic waste is involved from Permittee's watercraft, Permittee's facilities must meet the requirements of Alabama's Marine Sanitation law and any regulations adopted pursuant to that statute.
"c. Septic tank shall be installed in accordance with current regulations of the Baldwin County Health Department prior to mooring of vessels not in compliance with special conditions a and b above."
It appears that the defendant has a statutory right to build a "dock" and "shed," if authorized by federal and state authorities. Title 38 § 119, provides:
"Right of riparian owners to build wharves, docks, etc.The owner of riparian lands upon navigable waters in the state of Alabama may install in front of their respective riparian lands, wharves, docks, warehouses, sheds, tipples, chutes, elevators, conveyors and the like for receiving, discharging, storing, protecting, transferring, loading and unloading freight and commodities of commerce to and from vessels and carriers, and may use their riparian lands in connection *436 therewith and dredge out and deepen the approaches thereto, any may charge and collect reasonable tolls for the use thereof. All such structures are to be subject to such lines and limitations as may at the time of making such improvements be laid or placed by any authority of the United States, or of the state of Alabama, who may have authority to control harbor and pier lines." (emphasis added).
The question becomes whether the doing properly of that which the law authorizes can constitute a nuisance.
This Court has held that "there can be no abatable nuisance for doing in a proper manner what is authorized by law." Fricke v. City of Guntersville, 251 Ala. 63, 36 So.2d 321 (1948). In Rigsby v. Burton, 293 Ala. 459, 305 So.2d 366 (1974), this Court held that where a city zoning ordinance permitted a funeral home to be located in an area not zoned exclusively residential, and in the absence of evidence that the operation would constitute a nuisance, the trial court's restraining the use of the property as a funeral home was improper.
We think injunctive relief was improper here for at least one additional reason: Injunctive relief against nuisances should be cautiously given. See St. James' Church v. Arrington, 36 Ala. 546 (1860) (a private stable, near a church, is not necessarily a nuisance). This Court held:
"It is a general rule that an injunction will be denied in advance of the creation of an alleged nuisance, when the act complained of may or may not become a nuisance, according to circumstances, or when the injury apprehended is doubtful, contingent or merely problematical. . . Mere fear that it will result in injury to him is insufficient." Brammer, et al. v. Housing Authority of Birmingham Dist., et al., 239 Ala. 280, 195 So. 256, 259 (1939)."
The trial judge's finding that the proposed construction constitutes a nuisance for which an injunction would lie is overbroad and is not supported by the evidence.
In reaching the result we do, we have balanced interests in the instant case and find that the construction of a boathouse as authorized by the permit from the Corps of Engineers does not constitute a nuisance per se. See Daniels v. Chapuis, 344 So.2d 500 (Ala.1977).
It is undisputed that the Corps of Engineers was aware of plaintiff Bryant's objection to the issuance of the permit. The Corps wrote him on 29 June 1976:
"Reference is made to your letter dated 8 April 1976 objecting to the application by Mrs. Sheila O. Johnson for a Department of the Army permit to construct a boathouse and mooring pilings in Terry Cove, Baldwin County, Alabama, as advertised by our Public Notices Nos. 1-76-1-F and 1-76-1-R-F.
"Copies of the original and revised public notices were coordinated with all responsible Federal, State and local agencies. Also, an on-site inspection was made by representatives of this office which interposed no objection to the revised proposed project.
"Because of the possible adverse water quality considerations associated with the project, the Alabama Water Improvement Commission (AWIC) was requested to review the revised public notice which represented a reduced project from that originally proposed. AWIC issued water certification with conditions that the applicant agree to the revised project. Subsequently the applicant has applied for a permit from the Baldwin County Health Department to install a septic tank for disposal of any sanitary waste.

"The authority granted by a Corps of Engineers Section 10 permit neither conveys a property right nor authorizes any injury to property or invasion of other rights. Any disputes of this nature must be settled by the parties involved." (emphasis added).
The emphasized portion of this letter only spells out what this Court said in Rigsby v. Burton, and what may be the general rule, that an act or thing authorized by law may be maintained in such a manner as to constitute *437 a nuisance. See 66 C.J.S., Nuisances, § 17, p. 763.

II
The trial court also enjoined the proposed construction of the boathouse on the ground that it would be a prospective violation of the restrictive covenant applying to the Terry Cove Subdivision. The covenant in question limited construction to single private dwellings of at least 900 square feet, on any lot. In determining whether a proposed boathouse violates this provision, we apply the rule that covenants which restrain the use of real property are strictly construed in favor of free use. Only if the intent of the covenant is clear and unambiguous will it be given effect. Reetz v. Ellis, 279 Ala. 453, 186 So.2d 915 (1966).
The restriction here obviously only applies to structures on the lot, not to structures over the water.
In view of the above, the judgment of the trial court is due to be reversed and the cause remanded.
REVERSED AND REMANDED.
TORBERT, C. J., and BLOODWORTH, JONES, ALMON, SHORES, EMBRY and BEATTY, JJ., concur.
FAULKNER, J., dissents.
FAULKNER, Justice (dissenting).
I dissent.
In my opinion, the judgment of the trial court should be upheld under the ore tenus rule. The facts and evidence of the case lead me to conclude that a nuisance existed that could be enjoined. The majority says, in effect, an injunction can not stand, but if there is an unreasonable use of the property in the future, an action at law for damages will lie. I think that there is already an unreasonable use of the property by its owner, that constitutes a nuisance.
I would affirm the trial judge.