Plaintiff, Riverchase Homeowners Protective Association ("Riverchase Homeowners"), appeals from a judgment in favor of defendants, City of Hoover, Harbert-Equitable Joint Venture ("HEJV"), Still Hunter Associates, Inc. ("Hunter"), Riverchase Architectural Committee ("RAC"), and its chairman, Joseph McKay. This suit arises from an effort to enjoin the construction of a townhouse development known as "The Oaks" in the Riverchase Community of Hoover. Appellant also sought to have the zoning of Riverchase declared unconstitutional as contract zoning.
Riverchase Homeowners filed its original complaint against the City of Hoover, Hunter, and HEJV on April 9, 1986. It sought declaratory and injunctive relief against the City of Hoover because of its agreement to approve the subdivision plat of The Oaks and sought a preliminary injunction against the developers, all of which the court denied after a hearing on April 17. The City of Hoover and Hunter filed motions for summary judgment, which the Court denied June 18, 1986. HEJV and Hunter filed answers to the original complaint, which Riverchase Homeowners subsequently amended to add claims for breach of covenants and additional declaratory and injunctive relief. The amended complaint also added RAC and its chairman, Joseph McKay, as defendants. The trial court held a hearing on October 27, 1986, and entered its judgment on November 19. On December 18, Riverchase Homeowners filed a motion to alter or amend the judgment, which the court denied January 23, 1987. This appeal followed.
The Oaks is a 43-unit townhouse project on a 13-acre tract in Riverchase, a planned unit development in Hoover. The appellant, Riverchase Homeowners, is an organization of homeowners in Riverchase who oppose residential developments such as The Oaks. Riverchase Homeowners raises four issues: First, whether the 43-unit development violates the restrictive covenants in the deed. Second, whether RAC failed to determine that townhouses were an appropriate use for the area. Third, whether Hoover delegated authority to zone in Riverchase to HEJV and RAC. Fourth, whether the trial judge applied an improper standard in reviewing variances granted to HEJV. *Page 647 
Appellant's initial argument is that The Oaks project, as presently designed, constitutes a violation of the restrictive covenants in the deed. HEJV, the developer of Riverchase, sold the land on which The Oaks is to be developed, to Still Hunter, Bill Harbert, and Edwin Dixon. That deed contained the following restriction:
 "Said property conveyed by this instrument is hereby restricted to use for the construction and operation of a maximum of twelve (12) single family residences, or for the construction and operation of condominiums or other multi-family use with a density not to exceed five (5) units per acre. . . ."
Riverchase Homeowners' contention in this regard is that the proposed townhouses are "single family residences" within the meaning of the language in the deed and are therefore limited in number to 12. The trial court concluded that The Oaks, as a 43-unit development on a 13-acre tract, fell within the allowed density of 5 units per acre and therefore did not violate the covenant.
In Wisneiwski v. Starr, 393 So.2d 488, 489 (Ala. 1980), this Court said:
 "Covenants restraining the use of real property are strictly construed in favor of the free use of such property; but effect will be given to the manifest intention of the parties when the intention is clear and the restrictions are confined to a lawful purpose within reasonable bounds, and rights created by the covenant have not been relinquished or otherwise lost. Reetz v. Ellis, 279 Ala. 453, 186 So.2d 915
(1966)."
The Court elaborated on this point in Hines v. Heisler,439 So.2d 4, at 5-6 (Ala. 1983), where it said:
 "Furthermore, restrictive covenants are to be construed according to the intent of the parties in the light of the terms of the restriction and surrounding circumstances known to the parties. Kennedy v. Henley, 293 Ala. 657, 309 So.2d 435
(1975). Assuming, arguendo, that the intent of the parties is unclear, subsequent acts of the parties showing the construction they put on the instrument are entitled to great weight in determining what the parties intended. Brashier v. Burkett, 350 So.2d 309
(Ala. 1977); Kennedy, supra."
The covenant in the deed from HEJV to the developers of The Oaks allows for 12 single-family residences or a multi-family use not to exceed a density of 5 units per acre. Hunter aptly points out in its brief that a finding of ambiguity in the deed is implicit in the trial court's judgment. The restrictions do not mention any land use except "single family residence" and "condominiums or other multi-family use." Neither of these uses is defined within the deed, nor can one readily infer from the language used the category into which townhouses should fall. Although definitions for such terms could be imputed from the zoning ordinance of Hoover, the subdivision regulations of Hoover, or the Riverchase planned unit development regulations ("P.U.D. Regulations"), the deed restriction pre-dates all of these local ordinances, so the parties to the deed did not have the benefit of those documents.
This Court is not persuaded by Riverchase Homeowners' argument that, because each townhouse will be individually owned, the development must meet the restriction regarding single-family residences. Under such a strict construction of the language, condominiums and apartment houses would be tolerated under the latter part of the covenant, while individually owned townhouses would be prohibited. Such an unfair and illogical result was clearly unanticipated by the parties to the deed. Wisneiwski, 393 So.2d 488 (Ala. 1980). Because the intent of the parties to the deed is not clear from its face, the deed must be construed in light of the terms used and the circumstances surrounding the deed. As the Court said in Hines, "subsequent acts of the parties showing the construction they put on the instrument are entitled to great weight." 439 So.2d at 6.
In reviewing the record, this Court finds that the Riverchase Master Development Plan Map, which has been a matter of public record since the inception of Riverchase, *Page 648 
shows The Oaks as a site for owner-occupied higher density use. Furthermore, this map, which clearly showed the site as appropriate for higher density use, was referred to in the deed. The fact that the grantor, HEJV, supported the proposed development before the city and RAC also indicates that a townhouse development was within the intent of the parties who executed the deed. "[A] restrictive covenant on the use of real property will not be extended by implication or enlarged by construction or include anything not plainly prohibited and all doubts and ambiguities must be resolved against the party seeking enforcement." Reetz v. Ellis, 279 Ala. 453, 457,186 So.2d 915, 918, (1966), citing Bear v. Bernstein, 251 Ala. 230,36 So.2d 438 (1948).
Riverchase Homeowners' next contention is that RAC failed to determine that townhouses were an appropriate use for the area. The circuit court ruled on this issue in its judgment, as follows:
 "The court finds that the plans for the townhomes themselves were submitted to the RAC, and that the RAC studied those plans to assure their compatibility and harmoniousness with the surrounding area and homes in regard to appearance, landscaping, other aesthetic factors, and minimum square footage, etc. The court further finds that the RAC, as to the question of the actual use of the subject property, relied on the zoning of the subject property, which zoning allows townhome construction, and on the Riverchase Master Plan.
 "Additionally, the court rules that it would not have been proper for the RAC to determine that Hunter could not put his property to a use that is permitted by his deed, that is consistent with Hoover's zoning, that is approved by the City of Hoover, and that it is in accordance with the Riverchase Master Plan.
 "The RAC fulfilled and is fulfilling its proper duties. Wherefore, the court again rules against the plaintiffs."
In spite of this adverse ruling, Riverchase Homeowners citesWright v. Cypress Shores Development Co., 413 So.2d 1115 (Ala. 1982), for the proposition that RAC had the obligation to independently determine that a townhouse development was an appropriate use. A review of that case reveals that it is inapposite to the facts presented here. In Wright, the Court was presented with the question of whether a reservation of the right to amend or cancel covenants in a deed by an architectural control committee implied a duty of reasonableness and good faith regarding the impact of the proposed amendment on the general scheme or plan of development. The fact that RAC has the "right to disapprove any plans" for specific reasons does not impose an obligation of disapproving plans simply because some homeowners do not agree with the uses allowed by the approved master plan. After reviewing the record and the briefs, this Court adopts the reasoning of the circuit judge.
Appellant's next contention is that the City of Hoover delegated its zoning authority in Riverchase to HEJV and RAC. In Ramer v. City of Hoover, 437 So.2d 455 (Ala. 1983), a disgruntled citizen raised the same allegation of contract zoning in Riverchase against the City of Hoover. In Ramer this Court wrote: "[W]e find evidence to support the trial court's finding that Hoover never relinquished any legislative duties."437 So.2d at 466. Similarly, the circuit judge in the present case found that there was no evidence from which it could conclude that the Hoover city council or zoning board felt bound by any of the terms that HEJV proposed for the P.U.D. zoning of Riverchase.
Appellant relies on Haas v. City of Mobile, 289 Ala. 16,265 So.2d 564 (1972), in alleging contract zoning in the present case. In Haas this Court explained the prohibition against "contract zoning" as follows:
 "Zoning of properties by a municipality, being legislative in character, cannot be bargained or sold. The rezoning of a parcel of property by a municipality based in any way upon an offer or agreement by an owner of property is inconsistent with, and disruptive of, a comprehensive zoning plan." *Page 649 
289 Ala. at 19, 265 So.2d at 566. After reviewing the record and briefs, this Court agrees with the circuit court that there has been no evidence presented that indicates that the planned unit development zoning of Riverchase was based upon a contract with HEJV or RAC.
Appellant's final contention is that the trial judge applied an improper standard in reviewing variances from Hoover subdivision regulations granted to Still Hunter and Associates on The Oaks development. Hoover subdivision regulations provide that variances may be granted by the planning commission. The standard to be applied in granting such variances is delineated in Article IX of the Hoover subdivision regulations as follows:
"Sec. 1. Hardship.
 "Where the planning commission finds that unusual hardship may result from strict compliance with these regulations due to unusual topographic or other physical conditions relating to the land, that are beyond the control of the subdivider, it may vary the regulations so that substantial justice may be done and the public interest secured. However, such variation shall not have the effect of nullifying the intent or purpose of the subdivision regulations or zoning ordinance. Any variance thus authorized is required to be entered in writing in the minutes of the planned [sic] commission and the reason which justified the departure to be set forth."
Although the record reflects that three variances were granted, the appellant argues only that allowing a 50-foot right-of-way for roads within The Oaks rather than requiring the usual 60-foot right-of-way was improper.
After reviewing the record and briefs, this Court agrees with the circuit court that there is no evidence that Hoover acted in an arbitrary, capricious, and unreasonable manner in granting the variance. See City of Mobile v. Waldon,429 So.2d 945 (Ala. 1983). Instead, it appears that the 50-foot right-of-way was allowed in order to prevent undue alteration of the topography in The Oaks and needless cutting of trees along the roadway.
For the above stated reasons, the judgment is due to be, and it is hereby, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, BEATTY and HOUSTON, JJ., concur.